## J. E. CHAMBERS & CO. v. OAKES et al.

### No. 1401.

Court of Civil Appeals of Texas. Eastland.

March 1, 1935.

R. L. Henderson, of Waco, for appellant.

Cecil R. Glass, of Marlin, for appellees.

HICKMAN, Chief Justice.

Appellant sued Jesse Oakes, Mrs. Frank M. Oakes, and W. M. Byrd on a promissory note for $1,000 "payable $50.00 per month begin-

ning August 10th, and monthly thereafter for six months with balance due, including interest, 6/28/33," and for the foreclosure of a chattel mortgage lien executed by Jesse Oakes upon 370 opera chairs located in the Lyric Theater at Marlin, Tex. Mrs. Frank M. Oakes, who is not related to Jesse Oakes, is the owner of the building in which the opera chairs were located. In her answer she pleaded these defenses: (1) That the note had not been delivered, and (2) that the total consideration for the execution of the note was $300, which amount had been paid by Jesse Oakes. The defendant Byrd was dismissed from the suit on the ground that he was actually and notoriously insolvent. The defendant Jesse Oakes filed a formal answer, but made no defense to his own liability. Upon the answers of the jury to special issues, judgment was rendered against Jesse Oakes for the principal, interest, and attorney's fees on the note, together with a foreclosure of the chattel mortgage lien on the opera chairs; but as to Mrs. Frank M. Oakes it was decreed that the plaintiff take nothing; and the appeal is from that portion of the judgment. Jesse Oakes does not complain of the judgment.

■ The jury made fact findings favorable to Mrs. Oakes on each of the defenses pleaded by her. However, if the findings with reference to the defense of no delivery are to be upheld, the other issues become immaterial. On that defense the jury found: (a) That when Mrs. Oakes delivered the note to Jesse Oakes she directed him to tell appellant's agent, Jackson, not to pay any money to him (Jesse Oakes) until he (Jackson) telephoned her about the note; (b) that Jesse Oakes conveyed this message to Mr. Jackson; (c) who accepted the note and paid Jesse Oakes $300 in cash without calling Mrs. Oakes over the telephone. The evidence well supports these findings, and we do not understand that appellant contends to the contrary.

The first question for determination is whether these fact findings constitute a legal defense to the liability of Mrs. Oakes on the note. The situation of the parties was as follows: Jesse Oakes was indebted to appellant in an amount in excess of $1,000, and was also indebted to Mrs. Oakes for rent. His theater was closed down because of insufficient funds to operate same and pay his current bills. He desired to procure some cash to enable him to reopen his business, and to that end entered into a contract with appellant whereby it was agreed that appellant would advance him the sum of $300 on condition that he and Mrs. Oakes execute a note for $1,000, payable to appellant, whereupon $700 would be credited upon his prior indebtedness to appellant. Mrs. Oakes claimed not to understand this peculiar transaction; but was assured by Jesse Oakes that her liability would not exceed $300 as that was the entire amount which he was to borrow from appellant. She executed the note at her home in Marlin with the understanding, as found by the jury, that when Jesse Oakes presented the note to Mr. Jackson, the representative of appellant, he would tell him to call her on the telephone from Waco before he paid out the $300. It appears that Mrs. Oakes desired to have Mr. Jackson explain the note and verify the statement that she was incurring a liability not in excess of $300 before she was willing for it to be delivered and become effective. The jury found that Jesse Oakes delivered this message to Jackson, and that the latter did not telephone Mrs. Oakes, but delivered the $300 to Jesse Oakes and credited his past due indebtedness with $700.

The Negotiable Instruments Act, article 5932, § 16, reads in part as follows: "Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto."

As this statute has been construed by our courts, we experience no difficulty in arriving at the conclusion that the jury's findings bring this case well within its operation. Foster v. Security Bank & Trust Co. (Tex. Com. App.) 288 S. W. 438; Miller v. Murphy (Tex. Civ. App.) 206 S. W. 968; Davis v. Jarnigan (Tex. Civ. App.) 59 S.W.(2d) 281, and the authorities therein cited; 6 Tex. Jur. p. 645 et seq., §§ 48–50.

If the above conclusion is correct, the question as to whether Jesse Oakes was the agent of Mrs. Oakes becomes immaterial. The controlling fact is that the appellant company, through its agent, received the message sent by Mrs. Oakes, and it is unimportant whether that message was conveyed by its agent or by her agent. Likewise the questions presented regarding the application of the payments made by Jesse Oakes to appellant become immaterial, for it is manifest that, if the note never became effective as a binding obligation on Mrs. Oakes, it is unimportant how the payments were applied.

■ Complaint is made of misconduct of the trial judge in the following particulars: During the trial of the case a boy named Frank Oakes Barnes, about twelve years of age, sat with Mrs. Oakes. Whether or not

he is related to her is not made to appear. Near the conclusion of the noon recess, and before the court convened for the afternoon session, the trial judge, in the presence of counsel for both sides, introduced this young man to the jury with the statement that he hoped to be a lawyer and that in all probability before many years he would be standing before a jury pleading the cause of some client, whereupon one of the jurors remarked, "And he might be sitting as a judge," to which the judge replied, "Yes, he might occupy even that position." Later in the afternoon, and during a recess, counsel for appellant stated his objections to this procedure. It is not perceived how this occurrence would be calculated to influence a jury in returning a verdict in answer to the issues submitted. The boy was not a witness. Appellant's bill described him as being "well dressed, of a pleasing manner and striking personal appearance." We cannot conceive how the introduction of such a boy to the jury as a prospective lawyer could have heightened their admiration for him, and certainly cannot conceive how it could have prejudiced appellant's rights.

The assignments not discussed are deemed to present no questions of merit.

Affirmed.